Filed 7/10/26  In re M.T. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.T., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>M.T.,<br><br>    Defendant and Appellant. | D086498<br><br>(Super. Ct. No. J242863) |

APPEAL from an order of the Superior Court of San Diego County, Rohanee Zapanta, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

M.T. was charged in an April 11, 2025 amended juvenile court wardship petition with one count of murder (Pen. Code[1] § 187, subd. (a)) by use of a firearm (§§ 12022.5, subd. (a)(1), 12022.53, subd. (d)) (count 1); four counts of carjacking (§ 215, subd. (a)) (counts 2, 3, 4, 5); three counts of robbery (§ 211), including firearm and gang allegations (§§ 12022, subd. (a)(1), 12022.53, subd. (b), 186.22, subd. (b)(1)) (counts 6, 7, 8)); two counts of assault with a means of force likely to cause great bodily injury (§ 245, subd. (a)(4)) (counts 9, 10); and one count of taking a vehicle without owner consent (Veh. Code § 10851, subd. (a)) (count 11). It was further alleged that M.T. was armed with and used a firearm for counts 2 through 8 (§§ 12022, subd. (a)(1), 12022.53, subd. (b)) and that he committed counts 2 through 10 for the benefit of a criminal street gang (§ 186.22, subd. (b)(1).) M.T. was 17 years old during the commission of the alleged offenses.

M.T. appeals from the juvenile court's order transferring him to the jurisdiction of adult criminal court under Welfare and Institutions Code section 707. M.T.'s appointed appellate counsel has filed a brief which raises no claims of error and asks us to review the record independently for reversible error. (See *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*); *Anders v. California* (1967) 386 U.S. 738 (*Anders*).)

We have independently reviewed the record and find no arguable issue that would result in a modification or reversal of the transfer order. Accordingly, we affirm the order.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *M.T.'s Childhood and His History of Juvenile Offenses Not at Issue in the Motion to Transfer*

As detailed in the juvenile court's order and in the evidence presented at the transfer hearing, M.T. had an extremely traumatic childhood and adolescence, due in large part to parental abuse, neglect and instability. As we will describe, M.T. had a lengthy prior history with the juvenile justice system.

The first juvenile court wardship petition against M.T. was filed on December 13, 2019, when M.T. was 14 years old. It alleged vandalism (§ 594, subds. (a), (b)(1)); residential burglary (§ 459); and grand theft (§ 487, subd. (a).) An amended petition added a charge of misdemeanor assault. On January 17, 2020, a true finding was made on the burglary count; the remaining counts dismissed with a *Harvey* waiver, and on February 13, 2020, M.T. was adjudged to be a ward of the court.

On October 27, 2020, when M.T. was 15 years old, a petition was filed alleging that M.T. committed assault with a deadly weapon (§ 245, subd. (a)(1)) and misdemeanor battery (§ 242). An amended petition filed January 13, 2021, added charges of felony reckless evading (Veh. Code, § 2800.2, subd. (a)); evading while driving opposite to traffic (*id.*, § 2800.4); taking a vehicle without owner consent (*id.* § 10851, subd. (a)); buying, receiving, concealing, selling, or withholding a stolen motor vehicle (§ 496d); misdemeanor unlawful possession of burglary tools (§ 466); and resisting an executive officer (§ 69). On January 14, 2021, true findings were made on the charges for assault with a deadly weapon, felony reckless evading and

3

resisting an executive officer. The remainder of the charges were dismissed with *Harvey* waivers.

On August 12, 2021, when M.T. was still 15 years old, a petition was filed alleging assault with a firearm (§ 245, subd. (a)(2)); unlawful possession of a concealable firearm (§ 29610); unlawful possession of live ammunition (§ 29650); and resisting a peace officer (§ 148, subd. (a)(1)). On September 1, 2021, a true finding was made on assault with a firearm, and the remainder of the counts were dismissed with a *Harvey* waiver.

On October 27, 2021, when M.T. was 16 years old, a petition was filed alleging two counts of unlawfully furnishing fentanyl (Health & Saf. Code, § 11352, subd. (a)). The charges were based on M.T.'s furnishing of fentanyl to a fellow youth in a juvenile detention facility, who died as a result of using the substance. On October 28, 2021, true findings were made on both counts.

On December 12, 2022, when M.T. was 17 years old (and after the commission of the charges at issue here, but prior to a decision on the motion to transfer), a petition was filed alleging two counts of misdemeanor possession of a controlled substance (methamphetamine and fentanyl) (Health & Saf. Code, §§ 11350, subd. (a), 11377, subd. (a)), and one count of misdemeanor resisting an officer (§ 148, subd. (a)(1).) On January 11, 2023, a true finding was made on each charge.

B.    *The Offenses Alleged in the Petition at Issue in the Motion to Transfer*

The offenses alleged in the amended petition at issue in the motion to transfer occurred on three different dates: October 10, 2022, October 18, 2022, and November 7, 2022, when M.T. was 17 years old.[2]

---

[2]    As it is presumed in a fitness or transfer hearing that the juvenile committed the offenses charged (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 682), we set forth the factual background based on that presumption.

1. *October 10, 2022 Carjacking and Robbery*

According to testimony presented at the transfer hearing, on October 10, 2022, M.T. participated in an armed carjacking and robbery. Specifically, at approximately 4:00 a.m., M.T. and another male approached three people who were sitting inside a car in a parking lot. M.T. and the other male stated "What you fools doing? You guys bang blood?" and "This is my hood." Next, they pointed handguns at the car's occupants and told them to exit the vehicle, to leave their car keys and belongings, and to lie down on the grass or they would die. M.T.'s companion hit two of the victims in the head, and both M.T. and his companion kicked the third victim in the face. M.T and his companion were unable to drive the car that the victims had been sitting in because it had a manual transmission. Instead, they drove off in another vehicle that belonged to one of the victims, firing a gun as they left. The victims had personal property taken from them during the incident.

The stolen vehicle was recovered later that morning. Police eventually determined that DNA from M.T. was inside the vehicle.

2. *October 18, 2022 Taking of a Vehicle*

On October 18, 2022, a vehicle was taken by three males when it was left unlocked with the keys inside. M.T. was identified as one of the suspects.

3. *November 7, 2022 Murder*

On November 7, 2022, M.M. was fatally shot in the neck, near his jawline, while inside the apartment where he was staying. M.M. was allegedly a drug dealer, and scales and numerous counterfeit narcotic pills were found in the apartment. Law enforcement learned that M.T. had been sleeping on the couch in M.M.'s apartment and was with M.M. around the time of the shooting. Law enforcement also learned that M.M. had recently

obtained approximately $5,000, in the form of cash, which he was photographed with on the day of his death.

M.M. owned a distinct handgun. Approximately two weeks after the murder, M.M.'s gun was found in M.T.'s possession, as well as pills similar to those that were in M.M.'s apartment. M.T.'s DNA was found at the crime scene in M.M.'s apartment, including around and inside M.M.'s pants pocket.

### 4. *Gang Affiliation*

Evidence was presented at the transfer hearing that M.T. was affiliated with the Shelltown criminal street gang.

### C. *Proceedings on the April 11, 2025 Petition at Issue in This Proceeding*

Based on the incidents that occurred on the three dates described above, on April 11, 2025, an amended juvenile court wardship petition charged M.T. with one count of murder (§ 187, subd. (a), including firearm-use allegations (§§ 12022.5, subd. (a)(1), 12022.53, subd. (d)); four counts of carjacking (§ 215, subd. (a)), including firearm and gang allegations (§§ 12022, subd. (a)(1), 12022.53, subd. (b), § 186.22, subd. (b)(1)); three counts of robbery (§ 211), including firearm and gang allegations (§§ 12022, subd. (a)(1), 12022.53, subd. (b), § 186.22, subd. (b)(1)); two counts of assault with a means of force likely to cause great bodily injury (§ 245, subd. (a)(4)), including gang allegations (§ 186.22, subd. (b)(1)); and one count of unlawfully driving a vehicle (Veh. Code § 10851, subd. (a)).

The probation department filed a report recommending that jurisdiction of M.T.'s case be transferred to adult criminal court pursuant to Welfare and Institutions Code section 707. Among other things, regarding M.T.'s behavior while in custody, the report documented that "[M.T.] was booked into the Kearney Mesa Juvenile Detention Facility . . . for the first time on 11/13/19. Since that date, he has a total of 93 documented incidents

6

which include but are not limited to violent incidents, inappropriate behavioral incidents, safety and security concerns, and contraband."

On June 26, 2025, the People filed a motion to transfer jurisdiction over the petition to adult criminal court pursuant to Welfare and Institutions Code section 707. Among other things, the People's motion observed that M.T. had been charged as an adult for multiple violent incidents committed when he was 18 years old and was currently being held in adult custody.[3]

A hearing on the motion to transfer was held over the course of 12 days between June 30 and July 22, 2025. The testimony of 21 witnesses was presented. The juvenile court issued a ruling on July 22, 2025, which granted the motion to transfer jurisdiction to the adult criminal court.

In its ruling, the juvenile court detailed M.T.'s history and circumstances, as well as the nature of the instant offenses. Citing the factors set forth in the applicable statute, the juvenile court explained, "Under Welfare and Institutions Code § 707 [subdivision.] (a)(3)(A)–(E), the Court considered and weighed the following five factors in reaching its decision to GRANT [the People's] request to transfer to the adult criminal division. [¶] I. The degree of criminal sophistication exhibited by the minor. [¶] II. Whether the minor can be rehabilitated before juvenile court loses jurisdiction. [¶] III. The minor's previous delinquent history. [¶] IV. The success of prior attempts at rehabilitating the minor. [¶] V. The circumstances and gravity of the offense alleged in the petition to have been

---

[3] At the transfer hearing, the People presented evidence of several violent acts committed by M.T. after the offenses charged in the petition. On October 4, 2023, and October 16, 2023, while M.T. was being held in a juvenile detention center and while he was 18 years old, he engaged in violent altercations with other youths. On April 8, 2025, while M.T. was 19 years old and housed in an adult detention facility, he assaulted a deputy sheriff. Charges were filed in adult court for those offenses.

committed by the minor." The juvenile court presented a lengthy substantive analysis of each factor, finding the evidence was in favor of a transfer with respect to the first, second and fifth factors, but neutral as to the third and fourth factors. Ultimately, the juvenile court concluded by clear and convincing evidence that M.T. should not be retained within the jurisdiction of the juvenile court.

## II.

## DISCUSSION

Appointed counsel for M.T. filed a brief in which counsel summarized the relevant facts and proceedings, raised no claims of error, and asked us to conduct an independent review of the record for reversible error. (See *Wende, supra*, 25 Cal.3d at p. 441 [the appellate court must "conduct a review of the entire record whenever appointed counsel submits a brief which raises no specific issues"].) Counsel identified the following possible issue: "Whether the trial court erred by granting the prosecution motion to transfer appellant's case to adult court?" We offered M.T. the opportunity to file his own supplemental brief on appeal, but he has not responded.

We have reviewed the entire record for M.T.'s appeal, as required by *Anders, supra*, 386 U.S. 738, and *Wende, supra*, 25 Cal.3d 436, and we have not identified any arguable grounds for reversal or modification of the transfer order. M.T. has received competent representation on appeal.

## DISPOSITION

The order transferring jurisdiction of M.T. to the adult criminal court pursuant to Welfare and Institutions Code section 707 is affirmed.


HUFFMAN, J.*

WE CONCUR:


DO, Acting P. J.


CASTILLO, J.

---

* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.